[L. A. No. 3607. Department One.—June 8, 1916.]

## THEDA R. CONAWAY et al., Respondents, *v.* LYMAN D. TOOGOOD et al., Appellants.

RIGHT OF WAY—DETERMINATION OF CHARACTER OF USE—QUESTION OF FACT.—The question as to whether or not the use of a right of way has been adverse and under a claim of legal right so to do, or a mere matter of neighborly accommodation, is a question of fact to be determined by the jury, or the court sitting without a jury, from all the facts and circumstances of the case.

ID.—ADVERSE USER—ACTS CONSISTENT WITH.—Notice of a disclaimer of the owner's interest and the assertion of a claim of adverse right of way over land may be inferred from notorious acts; and where the grantee of the owner of the dominant tenement, upon assuming possession of it, plows and grades the way, rebuilds and maintains fences along both sides thereof, excavates a ditch about five feet in width along the north side of the roadway, either constructs or reconstructs a bridge at the end nearest the public highway, and thereafter begins using another strip of land immediately south of, in addition to, and adjoining the way theretofore used by himself and his predecessor, such acts negative a recognition on his part of the superior right of the owners of the servient tenement, and are consistent only with a claim of right to use the way, adverse to the interests of such owners.

ID.—PRESCRIPTIVE RIGHT—SUSPENSION OF.—One cannot acquire a prescriptive right over another's land while a tenant thereof, and such a tenancy operates to stop the running of the statute if it has already commenced; but the owner of the servient tenement cannot interrupt the continuous running of the statute by temporarily becoming a tenant of the dominant tenement.

ID.—LOCATION OF BOUNDARIES—OWNER PRESUMED TO KNOW.—The owner of premises is presumed to know the true location of his boundaries, and is bound to take notice of the nature and extent of possession by a claimant.

ID.—EASEMENT—INCIDENT TO LAND.—An easement as a right of way is incident to the land and passes with it unless expressly excepted by the terms of the deed.

ID.—PLEADING—PARTIES—WIFE AS PARTY PLAINTIFF—COMMUNITY PROPERTY.—In an action to recover damages claimed on the ground of interference with the use of an alleged private right of way, and for an injunction, if it was error to join a wife with her husband

as plaintiff, on the contention that the husband has the control
of the community property, the error was harmless, where no dam-
ages were awarded to the claimants and the judgment was not
affected by the joinder of the wife.

ID.—APPEALS—HARMLESS ERRORS.—Judgments should not be reversed
for errors that do not affect the substantial rights of the parties.

APPEAL from a judgment of the Superior Court of
Orange County, and from an order denying a new trial.
Z. B. West, Judge presiding.

The facts are stated in the opinion of the court.

Williams & Rutan, for Appellants.

Tipton & Cailor, for Respondents.

LAWLOR, J.—This is an action to recover damages
claimed by the plaintiffs to have been suffered by them
through the acts of the defendants in interfering with their
enjoyment and use of an alleged private right of way, and
to perpetually enjoin the defendants from so interfering.
The case was tried without a jury. Judgment was rendered
for the plaintiffs decreeing their right to maintain and use
the right of way, eighteen feet in width, as described by
metes and bounds, and forever restraining and enjoining the
defendants from obstructing or destroying the said right of
way or interfering with plaintiffs in their use thereof. The
defendants interposed a motion for a new trial, which was
denied on condition that the plaintiffs grant to Lyman D.
Toogood, one of the defendants, a release and quitclaim deed
to the north six feet of the said way. Upon the tender of
the said release and quitclaim deed, an order was made deny-
ing the motion for a new trial. It was further decreed that
the plaintiffs were not entitled to recover their costs nor any
damages. The defendants appeal from the judgment and
from the order denying their motion for a new trial.

1. The principal question involved in the appeal is whether
the claimants are entitled to a right of way over the lands de-
scribed. It is alleged in the amended complaint that a right
of way twenty-four feet wide had been acquired by purchase
and by prescription, extending westward from the dominant

tenement, which is the land owned by the claimants, along the line separating the two contiguous parcels of land owned by the defendants, Toogood and Hanes, respectively, and that the said right of way was the only means of ingress and egress to and from the claimants' land. In other words, the claimants assert that the northern half or twelve feet of the strip constituting the right of way extended along the southern line of the Toogood property, while the southern half or twelve feet extended along the northern line of the Hanes property, so that the center of the right of way represented the boundary line between the respective lands of the defendants. There was a conflict of evidence on the question whether any portion of the alleged right of way did, in fact, extend along the property owned by the defendant Hanes. The claimants introduced evidence tending to prove that the fence, which inclosed the southern line of the right of way, was located twelve feet south of the north line of the Hanes property. But Hanes testified that he regarded the said fence as being practically on his north line. The court found, in this connection, that the fence on the south side of the right of way has been recognized and accepted by Hanes as constituting his north line. The court further found that the allegations of the complaint that the right of way was secured by purchase are not true. This finding is not attacked. But the court did find that the claimants were entitled to a right of way by prescription, and awarded judgment in their favor for the southern eighteen foot strip of the twenty-four foot strip claimed by them, and then, as already stated, upon the denial of the motion for a new trial, modified the judgment so as to include only the southern twelve feet of the alleged twenty-four foot strip of land.

It is the contention of the defendants that the claimants have acquired no rights by prescription over the land now owned by defendant Toogood, because their possession and use of the way, so far as Toogood and his predecessors in interest are concerned, arose out of a mere neighborly accommodation. There was evidence tending to support this contention. One Bentley, who was the owner of the dominant tenement in 1886, about which time the use of the way commenced, testified that he had arranged with the then owners of the servient tenement, now the Toogood property,

to permit the latter to plow up and cultivate the existing road which extended to the north from his land along the eastern line of the servient tenement, in exchange for the privilege, on his part, of traveling out from his land to the west, instead of northward, to the public highway. The defendants claim both parties to this arrangement had always understood it to be merely a matter of accommodation which should create no legal rights whatever. (*Pinheiro* v. *Bettencourt*, 17 Cal. App. 111, [118 Pac. 941] ; *Davis* v. *Martin*, 157 Cal. 657, [108 Pac. 866].) Thereafter Bentley commenced traveling over the way to the west and subsequently the owners of the Toogood property erected a fence on the north side of the way. Meanwhile the road to the north was closed up and abandoned by Bentley, while an osage orange hedge along the road was cut down and the land placed under cultivation. It is contended by the claimants that whatever the parties to the arrangement may have regarded as the legal status of the matter, the evidence in the case clearly indicates that there never was any intention of abandoning the road to the west and re-establishing the one to the north. The court found on this point that the owners of the Toogood property "had knowledge of said use, acquiesced therein, and understood that it was being used by said Bentley adversely and under a claim of right." The question as to whether or not the use of a right of way has been adverse and under a claim of legal right so to do, or a mere matter of neighborly accommodation, is a question of fact to be determined by the jury, or the court sitting without a jury, from all the facts and circumstances of the case. (*Clarke* v. *Clarke*, 133 Cal. 667, [66 Pac. 10] ; *Franz* v. *Mendonca*, 131 Cal. 205, [63 Pac. 361] ; *Abbott* v. *Pond*, 142 Cal. 393, [76 Pac. 60].)

2. But it is not necessary to rest this case upon the nature of Bentley's use of the right of way, for, in our opinion, the acts of his successors in interest were sufficient to support the court in finding a prescriptive right in favor of the claimants, regardless of the fact that such use, in its origin, may have rested upon permission or license. In 1887 John H. Cole became the owner of the dominant tenement, purchasing it from Bentley. At the time he took possession of the property he found the road to the west the only apparent means of ingress to and egress from his land. The road to

the north had been closed some years previously, and, except for the mention in the deed, there was nothing to show that it had formerly existed. His wife testified that she did not know there ever was a roadway running north from the land. To the defendants' contention that Cole had never asserted a claim of right to use the way to the west, Cole testified, in effect, that he had always assumed that he had a right to travel over the southern part of the Toogood property, and had not asked for the privilege of using it, but had continued to make use of it, without protest on the part of the owners of the servient tenement, as the sole means of entering upon and leaving his land, until he conveyed it to the claimants. Upon assuming possession of the dominant tenement Cole plowed and graded the way to the west, rebuilt and maintained fences along both sides, excavated a ditch about five feet in width along the north side of the roadway, either constructed or reconstructed a bridge at the end nearest the public highway, and, as the court found, some time about the year 1890 began using a strip of land, immediately south of, in addition to, and adjoining the way theretofore used by himself and Bentley. Whatever may have been the interest of his grantor in the right of way, these acts of Cole negative a recognition on his part of the superior right of the owners of the servient tenement, and are consistent only with a claim of right to use the way, adverse to the interests of such owners. (See *Humphreys* v. *Blasingame,* 104 Cal. 40, [37 Pac. 804] ; *Barnes* v. *Daveck,* 7 Cal. App. 487, [94 Atl. 779].) Notice of a disclaimer of the owner's interest and the assertion of a claim of adverse right of way over the land may be inferred from notorious acts. (See *Oglesby* v. *Hollister,* 76 Cal. 136, [9 Am. St. Rep. 177, 18 Pac. 146].) According to the evidence, this use of the right of way was continued by Cole from the time he took possession of the land for about eight years in person, through his tenants thereafter until December 2, 1910, and then by the claimants themselves, during all of which time there were no acts or declarations by the owners of the servient tenement indicating an assertion of the right to in any way control such use.

3. The defendants, however, contend that even if Cole held the way adversely and under a claim of right, he did not

hold it at any time for a period of five successive years, and point out that, according to his own testimony, during part of the time that he was owner and in occupation of the dominant tenement he was also, for a season, a tenant of the Toogood property. It is to be conceded that one cannot acquire a prescriptive right over another's land while a tenant thereof, and that such a tenancy operates to stop the running of the statute if it has already commenced. (*Franz* v. *Mendonca,* 131 Cal. 205, [63 Pac. 361] ; *Ball* v. *Kehl,* 95 Cal. 606, [30 Pac. 780].) The evidence, however, does not disclose at what period this merger occurred. Assuming it to be in the middle of the eight years when Cole was in personal occupation of the dominant tenement, the period most favorable to the contention of the defendants, there would still remain three or four years during the personal occupation and use of the right of way by Cole, to which must be added the years following when the land continued to be occupied by his tenants.

4. The defendants also point out that at various times both the defendants, Hanes and Toogood, were tenants of the dominant tenement, and that, not only did they not claim any right of way over the servient tenement during such tenancy, but that, as they have since become the owners of the servient tenement, such claims, even if made, would now be of no avail to the claimants. But we do not understand the law to be that the owner of the servient tenement can interrupt the continuous running of the statute by temporarily becoming a tenant of the dominant tenement. Moreover, the evidence is uncertain as to the time the defendants became tenants of the claimants' land. If it was since they became the owners of their respective lands, which was in both instances during the year 1907, the statute had already run in favor of the claimants, and if before 1907, their subsequent purchase of the servient tenement would not undo the adverse right to the way already acquired by the grantors of the claimants.

5. Assuming that the right of way, as established by the court, extends wholly or in part over the Hanes property, it need only be said, in answer to the contentions of the defendants, that the evidence fully warrants the conclusion that, in

such a case, the claimants have acquired a right of way by prescription as against defendant Hanes. As already stated, about the year 1890, Cole, who was then using the northern half of the twenty-four foot right of way described in the complaint, commenced using the southern half thereof, which portion was supposed to lie upon the lands now possessed by defendant Hanes. The defendants do not claim that Hanes or any of his predecessors in interest ever granted permission to the claimants or their predecessors to travel over the said southern twelve feet. It is suggested, however, that Hanes and his predecessors in interest had erroneously assumed that the said southern twelve feet were upon their neighbors' land to the north, and for that reason had made no protest against the trespassing of the various parties in possession of the claimants' land. But there is no force to this argument. "An owner of premises is presumed to know the true location of his boundaries, and is bound to take notice of the nature and extent of possession by a claimant." (2 C. J. 268, sec. 597½.)

We think, therefore, that the finding of the court, "that for a period of more than twenty years last past the said strip has been used by the plaintiffs and their grantors and predecessors in interest under a claim of right, continuously, uninterruptedly, adversely, and with the knowledge and acquiescence of the owners and occupants of the . . . [Here follows a description of the lands now occupied by defendants, Hanes and Toogood, respectively]," is properly sustained by the evidence.

6. The defendants call attention to the fact that the way to the west was not mentioned in any of the various mesne conveyances through which the claimants trace their title, while in each instance the deed describes the road to the north as the way appurtenant and incident to the land. It is contended, therefore, that the claimants cannot take advantage of the right of way gained by their predecessors. But the rule is well established in this state that an easement as a right of way is incident to the land and passes with it unless expressly excepted by the terms of the deed. (Civ. Code, secs. 1084, 1104; *Rubio Cañon etc. Assn.* v. *Everett*, 154 Cal. 29, 33, [96 Pac. 811] ; see, also, *Kripp* v. *Curtis*, 71 Cal. 62, 66, [11 Pac. 875] ; 14 Cyc. 1152.)

7. In the amended complaint it is alleged "that the plaintiffs herein are husband and wife, and that the property hereinafter described and alleged to be the property of the plaintiffs is community property, but that the record title is in the name of the wife, Theda R. Conaway." The defendants demurred to the complaint upon the ground, among others, "That there is a misjoinder of parties plaintiff in said action, in that Theda R. Conaway is not a proper party plaintiff in said action." In support of the demurrer the defendants rely upon the rule that the husband has the management and control of the community property, retains the legal title notwithstanding it may stand of record in the name of the wife, and is the proper party in all actions concerning the community property. (*Spreckels* v. *Spreckels*, 116 Cal. 339, [58 Am. St. Rep. 170, 36 L. R. A. 497, 48 Pac. 228]; *Osborn* v. *Mills*, 20 Cal. App. 346, [128 Pac. 1009]; *Peiser* v. *Griffin*, 125 Cal. 9, [57 Pac. 690]; *Fulkerson* v. *Stiles*, 156 Cal. 703, [26 L. R. A. (N. S.) 181, 105 Pac. 966]; *Barrie* v. *Carolan*, 111 Fed. 134; Civ. Code, sec. 172; 21 Cyc. 1683.) They contend therefore, that it is error for the husband to join the wife with him in bringing the action. But as no damages were awarded to the claimants, and as the judgment was apparently not affected by the joinder of the wife as a party plaintiff, we cannot say that the defendants have suffered any injury by the ruling of the court upon the demurrer, even conceding that the ruling was erroneous. (*Hopper* v. *Barnes*, 113 Cal. 636, 641, [45 Pac. 874]; *Meier* v. *Wagner*, 27 Cal. App. 579, [150 Pac. 797]; *Bollinger* v. *Bollinger*, 154 Cal. 695, 707, [90 Pac. 196].) As was said in the Bollinger case: "Judgment should not be reversed for errors that do not affect the substantial rights of the parties."

8. We find no merit in the claims of error in regard to the testimony of one Hansler, a co-owner of the property now owned by Toogood at the time Bentley commenced using the right of way to the west, as to the nature and character of such use. Even conceding that the testimony had the import claimed by the defendants, the error is not prejudicial, for the reason that we think the evidence was sufficient to warrant the court in determining that a prescriptive right

had subsequently ripened in Cole, independent of the legal effect of Bentley's use.

None of the other points merit discussion.

The judgment and order are affirmed.

Shaw, J., and Sloss, J., concurred.