## Bridwill, et al. v. Neltner, et al.

(Decided February 13, 1917.)

## Appeal from Campbell Circuit Court.

1. Easements—Prescription—Permissive Use—Adverse Character of Use.—A right by prescription to a passway is founded upon the presumption of a grant, such presumption arising from the adverse, uninterrupted and continued use of the passway by the person asserting the prescriptive right thereto for the statutory period of limitations. But when it is made to appear that the use of the passway was accorded to the claimant by the owner of the land as a mere privilege, the character of the passway is established and the claimant's right to the use thereof continues to be permissive until something is done to bring notice to the owner of the land that the character of the use has been changed. For one cannot enter upon the use of a permissive privilege and claim, after a lapse of time, that he intended during the while that it should be as of right and in spite of the owner's will, and thereby gain a title to it.

2. Easements—Prescription—Change of Passway.—The right of the public or an individual to a passway, when properly acquired by prescriptive use is not lost by mere changes in the passway, where such changes are so slight as to make little difference in the location of the passway or its use. But this rule does not apply where a new passway, without closing the old and long-used one, is opened leading from it, having new termini and a wholly different course.

BLAINE McLAUGHLIN for appellants.

JAS. C. WRIGHT for appellees.

Opinion of the Court by Chief Justice Settle— Affirming.

This is an appeal from a judgment of the Campbell Circuit Court refusing the appellants, Edward L. Bridwill and Anna L. Bridwill, his wife, the use of a passway maintained by the appellees, Joseph Neltner and others, on their land, from another and older passway also on their land, which had long been traveled by appellants from their land and residence in getting to the county road leading from Alexandria to Onenito, both in Campbell county. The judgment also denied appellants a mandatory injunction asked to compel the removal by appellees of a gate erected by them across the passway first mentioned. The attached map will indicate with approximate correctness the situation of the lands owned by the parties, respectively, and the locations of the two passways. It will be observed from the map that appellants' land adjoins and lies southwest of that of appellees, and that the east boundary of the land of the latter lies on the Ohio river, and on the north borders for a considerable distance upon the county road running from Alexandria to Onenito. The old passway, which for many years had been used by appellants and their vendors, runs from the letter "A," on their land, shown on the map, down a tributary of Ten Mile creek through the land of appellees to an old ford on Ten Mile creek, thence in a northerly direction over the land of one Marsh to the letter "C," where it intersects the county road, and the county road formerly, and for a great many years, ran from letter "C" to letter "G" on the map; thence at right angles and in a southwardly direction across the land of appellees; but about ten years ago the county road was changed, that part of it from the letter "D" to the letter "G" on the map being abandoned, and it was then made to run from the letter "D" southwardly to the letter "E" on the map; thence eastwardly to the letter "F" where it entered the road leading to Onenito. When the road was changed by running it from "D" to "E" the fiscal court of the county caused to be constructed, a short distance from the letter "E," a bridge across Ten Mile creek. Shortly thereafter the appellees erected on the bluff near, and west of letter "E," a dwelling house, and about the same time established for their own use the passway which as shown on the map

-2-

leaves the old passway, so long used by appellants and their vendors at the letter "B," and intersects the county road at the letter "E" near the bridge on Ten Mile creek. This passway is the one in controversy; it being the contention of appellants that as it constitutes a mere change in the old passway they are entitled to its use and it will afford them a better and nearer route to the county road. On the other hand it is the contention of appellees that the new passway was not intended to be, and is not a change of the old passway, but was made for the use of themselves and tenants alone, and that appellants are not entitled to the use thereof; that, in getting from their land to the county road, appellants are confined to the old passway which intersects the county road at "C," to which they had acquired a right by long use and prescription, although it runs in most part over the land of appellees. Upon looking to the evidence found in the record, we find that its great weight is to the effect that appellants and their vendors have used as a matter of right adversely to appellees and all others, the passway from letter "A" to the county road at "C" for at least fifty years, which clearly gives appellants an easement in the passway by prescription, raising the presumption of a grant. We are further of opinion that the weight of evidence strongly conduces to show that they have not obtained such right to the use of the passway opened by appellees upon their land from "B" to "E"; and though it appears that they, and one or more of their vendors and even others, occasionally traveled the latter passway, in going to the county road, such use as was thus made of it was merely permissive. In other words, the evidence fails to show that appellants or their vendors have had such continued, adverse use of the passway from "B" to "E" as would prevent appellees from prohibiting at any time their further use of it. Indeed, the fact that the new passway was established only ten or eleven years ago, of itself, demonstrates that appellants have not had such constant or continued use of it as would entitle them to claim it of right; for such use to confer upon them a prescriptive right to an easement therein must have continued for fifteen years adversely to the appellees.

It is further apparent from the evidence that the passway from "B" to "E" was not intended, or made,

as a change in the old passway, but was opened for the convenience of appellees and their tenants alone.

We are aware that it has been repeatedly held by this court that the right of the public or an individual to a passway, when properly acquired by prescriptive use, is not, ordinarily, lost by mere changes in the passway. It will, however, be found by an examination of the cases so holding that the changes made were not in the termini of the passway or its course, but where it ran through a woodland or unenclosed and uncultivated fields, and the changes were so slight as to make little difference in the location of the passway or its use. Wray v. Brown, 155 Ky. 761; Salmon v. Martin, 156 Ky. 309; Anderson v. Southworth, 25 R. 761. But in the case before us there has been no change of the character referred to. The passway in dispute is a new passway, having new termini and a wholly different course. The old passway, so long used by appellants and their vendors, is intact. If, as complained by them, from the ford at the creek to its point of intersection with the county road at "C," it has gotten so out of repair as to make its use by appellants impracticable, it is because they, and others entitled to travel it, have failed to keep it in repair. Appellees are not to blame for its condition. They do not use it or require its use; nor are they charged with any duty to keep it in proper condition for travel.

A right by prescription to a passway is founded upon the presumption of a grant, such presumption arising from the adverse, uninterrupted and continued use of the passway, by the person asserting the prescriptive right thereto, for the statutory period of limitations. O'Daniel v. O'Daniel, 88 Ky. 185; Bowen v. Cooper, 23 R. 2065; Chenault v. Gravitt, 27 R. 403; Talbott v. Thorn, 91 Ky. 417; Riley v. Buchanan, 116 Ky. 625; Ray v. Nally, 28 R. 421; Trustees Cin. S. Ry. v. Slaughter, 126 Ky. 492; Prewitt v. Houstonville Cemetery Co., 31 R. 125; Boyd v. Morris, 32 R. 642; L. & N. R. Co. v. Hagan, 141 Ky. 20. But when it is made to appear that the use of the passway was accorded to the claimant by the owner of the land as a mere privilege, the character of the passway is established and the latter's right to the use thereof continues to be permissive until something is done to bring notice to the owner of the land that the character of the use has been changed. For one cannot enter upon the use of a permissive privilege

and claim, after a lapse of time, that he intended during the while that it should be as of right and in spite of the owner's will, and thereby gain a title to it. Swango v. Greene, 155 Ky. 227.

We are convinced from the evidence in this case that such use as appellants and others have made of the passway in controversy was permissive only, and a neighborly accommodation or courtesy from the appellees; and this being so, appellees had the undoubted right to revoke the privilege at any time they saw proper to do so. It follows from what has been said that there is no error in the judgment of the circuit court. Hence, it is affirmed.